Good morning, if the court please, I'm Gerald Cunningham and I represent the plaintiffs. And we're here today because Ms. White had a Title VII Retaliation Claim and the claim failed because of the first... Because the plaintiff wasn't engaged in protected activity. Protected activity, right. That's it in a nutshell. Yes, sir. Okay, what practice of the employer was she complaining about? She was complaining about the fact that she was harassed twice. I know, by the employer? Yes. For complaining about a practice of the employer? That the employer knew of the harassment on two occasions. No, no, no. No. What practice did she complain about that the employer was engaging... What was the employer doing that violated the law? The employer failed to take action on Notice I, which resulted in Notice II. And the way the law reads it, the employer can be held liable for the obligation if they have prior knowledge that this person might have committed this type of harassment before and they did nothing. The problem we had here was she reported this in the beginning of the case, it's in the pleadings, it's in her testimony. We had severe discovery problems and she elected not to pursue that issue, but that's not pertinent. What's pertinent is what was in her mind when she made that second report, not whether or not she went ahead and pursued it later in the case. When she made that report, she believed that she was presenting a case under their sacred heart policy which required them to report immediately the identical claims that she had. Just be a little clearer if you could for me. You're talking about two reports. The morning of April 17th, she claims that the white male in the examination room made a provocative comment to her. So she complains to the employer about that comment, correct? She complained to the employer first about the December complaint. All right. And tell me what that was. And then April 7th... Excuse me? Tell me about the December complaint. That's in the... It's the same identical thing. She was... The same man... Same man made another unseemly remark. In the closed room, she reported it to her supervisor. The supervisor said, well, take care of it. She was a new employee. She brought nothing else up about it, and that was the end of it. Then he comes back in April and propositions her again. She's in a closed room. He's 50 years senior to her, different race. She reports it to the supervisor in the same manner. Then she was told to go to the doctor. She went to the doctor. She complained to him. The doctor said, we will take action against this man. We will terminate him as a patient. And they did, him and his wife. Well, it wasn't right away. Well, they did terminate him. Yes. So that's the two events. But what we're... Again, as Judge Joflat said, what is the practice of the employer? She's complaining about the patient. What is the practice of the employer about which she is complaining? The practice of the employer is we will investigate immediately. We will take immediate action. And that's discriminatory conduct? That's in their policy. No, no, no. Is that discriminatory conduct in violation of Title VII? I misunderstood you. Does that constitute discrimination on account of race, sex, or whatever? Yes, sir. In violation of Title VII? I believe the case was if the employer had knowledge of a prior event and took no action, then the employer could be held liable. What you're saying is that if the employer took no action, it transforms the plaintiff's notice to the employer as a complaint in advance that the employer is engaged in discriminatory conduct. Is that it? Yes. Okay. But are you conceding that little is dispositive here? That is that she opposed a violation of Title VII as opposed to being asked to participate in an internal investigation by her employer and actually emailing the circumstances of what happened with the patient? No. What little is so much different in this case? The facts are just a little man. The man waited eight months to even make a report about somebody making a remark, and they said that is not the way this is supposed to be. The basics are for this type of a claim. If they have knowledge and they don't do anything, and you let them turn around and ignore a serious complaint like the second one, which was as serious as the first, you let them ignore that second one, what does an employee do? What is this system for when they had knowledge that this man was a problem? Why was he back in a closed room with her again? That was what the employer did wrong under Title VII. When you say, again, at the evidentiary hearing, based on the motion in limine, the first instance was never part of the evidence. Yes, it was. I'm sorry. With due respect, it was in the testimony of the deposition. It's in the pleadings. The earlier time with the patient, the first time that she had opposed the unlawful activity was when she wrote the note on the 17th. No, no, no. It's in the testimony. Keep in mind, discovery failed in this. We just failed. We never got to the truth. That was the attorney's fault. We failed. When we filed this complaint, complaint number one was brought into it. Complaint number two was brought out in the open with the complaint. The initial disclosures, the employer never challenged it. They never responded and gave proof. Is your argument something like this? What? Is your argument something like this? She complained about the patient's behavior to her employer. When the employer failed to take the action she expected with regard to the patient, her complaint about the patient transformed into a complaint about the employer's practice of discrimination. The way the case law reads. No, no, no. Not the case law. Is that what this is about? There's only one way you can drag an employer in. Her first complaint had nothing to do with the employer's practice of discrimination. Do you agree with that? Yes, sir. Okay. So it became somehow a complaint about discrimination because the employer's response was inadequate. In other words, the way the law. Is that it? That's pretty close. Okay. What you have is with that first complaint, if the employer. She didn't go back and tell the employer. Well, she did. I complained to you earlier and you didn't take adequate action to correct the problem. I am now complaining that your failure to do that was an act of discrimination in the workplace. That's correct. And that's what I'm complaining about. Yes, sir. And if you read the judge's ruling. The judge said she had to prove that. Sacred Heart is discriminating against people on account of race or sex. Because they inadequately respond to complaints that have nothing to do with Title VII. And that's what the judge's ruling stated. And she complained in the first case. They challenged. It's a very novel point. The case came about because the judge said she did not pursue it in the trial. And the matter is, what was her mind thought when she made that first complaint? And then the second one. Did she think it was harassment under the law? And under the law, it was. And the judge explained it was. I don't think what's in her mind has anything to do with it. I think what has to do with it was the subject of her complaint when she complained. Yes, sir. I see my time is up. Okay. You save rebuttal. Thank you. Mr. Draco. Thank you, Your Honor. I think the court understands the issue, which is whether the appellant at the trial level established that she engaged in protected activity. I disagree with Mr. Cunningham's recount of the facts of the case. And I would point to the record where, in the pretrial, we had set out a series of motions in limine, two of which he agreed to. One of them was not to mention anything about the December 2012 alleged encounter with the patient. And if you look at the judge's colloquy between Mr. Cunningham and the bench on our Rule 52 motion, she points out that she was very surprised that Mr. Cunningham withdrew that portion of his case, that he had agreed in the motion in limine, at the pretrial, not to present any evidence regarding the earlier instance. So what the trial court was faced with was one incident involving the appellant and the patient, and that was April 17, 2013. There was no prior notice or evidence of prior notice on the part of Sacred Heart about this patient having any improper, inappropriate conduct based on an individual's gender or race. The first time that they became aware of it was on April 17, 2013, when he made the inappropriate comment on the appellant's way out of the exam room. She immediately reports it to her supervisor. Her supervisor says, that's not right. Go report it to the physician. The physician says, you do not have to go back in the room with the patient. Go tell the supervisor to draft a letter terminating the patient and any immediate family members that were at the practice, and that would be the wife, as the court has pointed out. The letter was issued. The patient was immediately terminated. We took prompt remedial action to address a concern about an offensive conduct that did not rise to the level of unlawful employment practice, which little requires, little I don't think is indistinguishable from this case, other than you had a co-worker there, and here you have a third party, but I think the standards apply. A single, isolated incident that was addressed, it's not unlawful employment practice under Title VII. Whether it was addressed or not, the plaintiff would have to go back to the employer and say, I'm complaining about your failure to correct this situation because I think it is discriminatory. I absolutely agree, and there's no evidence that she did that in this case. There's nothing in this record where the plaintiff is telling the employer, your failure to do this, that, and the other thing is discriminatory. I'm complaining about this. It's a discriminatory practice in violation of the law. You're absolutely correct, and if you look at the trial transcript and cross-examination of the appellant, she was specifically asked a series of questions along that line, and she agreed she never made a complaint that she felt that what Sacred Heart was doing violated the law, i.e., how they handled her complaint. And she doesn't even complain about her termination. She agrees that she violated HIPAA. The court found that she violated HIPAA. So even if she had engaged in protected activity, which she did not, the court, Sacred Heart, advanced a legitimate non-discriminatory reason for her termination, which was the HIPAA violation. But addressing the HIPAA violation, that leads to the comparator chart that was excluded by the court based on grounds of hearsay. That chart was produced by your client in response to a specific interrogatory. Correct. But that still doesn't mean that it fell within the business records section or the hearsay section. And even if it did, if you look at the transcript. But let me ask in terms of the objection that was sustained on grounds of hearsay. If the comparator chart had been embodied within an answer to an interrogatory, could that have not been admissible as a statement of a party opponent? I don't necessarily agree with that proposition that in every case it automatically becomes an admission by the party opponent. You still have to establish that it is an admission by the party opponent, which he failed to do. But what the court did do is she gave him every opportunity, whether it was at the pretrial conference, whether it was at the evidentiary hearing, and even in his examination of Ms. Hope, which was one of the HR directors, to get into it. What she was requiring is that he elicit testimony from somebody that had personal knowledge regarding the information in the chart. And if you look at the transcript, at one point during the examination of Ms. Hope, the HR director that he called in his case in chief, she said, you can't reference the chart, but I'm going to allow you to go through the names on the chart and ask her if she had any personal knowledge about the incident involving the HIPAA violation or alleged HIPAA violation with that individual. He elected not to do it. He elected not to do it at the evidentiary hearing stage as well. So she gave him the opportunity to elicit other examples of HIPAA violations. She allowed two in, one with Ms. Leggett and the other one with Ms. Royo. And she was allowing him to go even further than that, but he elected not to do it. Why? I don't know. But that's his issue in not pursuing that line of questioning with the appropriate witnesses, which the court instructed him he could do. There are no further questions. I think we understand the case. Mr. Cunningham. Just two brief responses. The first is we're dealing with a young lady who was in one of her first jobs in the medical profession who knows nothing about Title VII other than what the employer tells her. And we're sitting here now stating she has to cover her tracks the first time when a supervisor tells her we're going to take care of it. That was enough for her. That should be enough for any young lady. And to sit and think now that she should figure out the legal system and say, oh, I want to follow up on this. She just wanted to keep her job. She's brand new. And looking at it through her eyes, I think that's sufficient. The second thing is about this discovery. Well, we had all these opportunities in the end. Our opportunities came forth in the beginning, in the initial disclosures. No one, no one said anything about her not complaining in December. In response to the written discovery, much of it, two years, not one iota of evidence against the fact that she complained about that first time. But didn't you concede to the motion of limine that was filed by Sacred Heart and that precluded any evidence of that December incident? I don't think so because it was a Part 52 dismissal. What I'm saying is. I'm sorry. So you believe that during the course of the bench trial that the December incident was part of the evidence the court considered? Yes. I believe so. It's in the record. The judge knew about it. The judge denied summary judgment. They had a summary judgment motion on it. Went forward with a summary judgment motion with no evidence on that issue. We got no evidence all the way until the bitter end. We did a Rule 30b-6 discovery, which was a total failure, and that's why we're here today, we believe. To come up now and say we didn't seek the evidence, we didn't look for it. He comes in with no evidence after that 30b-6 deposition that asked for every one of these things is just not right. That's all. As to the second prong, though, you can see there's an alternative ground for the district court, though, beyond the absence of a protected action in that what your client's father did was pretty bad. I mean, you have this incident, and he gets the number of the patient and calls and sort of threatens the patient. Violation of HIPAA, pretty serious violation of HIPAA. The district court, that was an independent reason for her decision, you would agree. I missed it. Whether there's protected activity or not, assume protected activity. The district court in the bench trial found that there was a neutral, non-discriminatory reason for the discharge, which is this very egregious HIPAA violation by the plaintiff and her father. The evidence on the chart, HIPAA violations . . . I'm just talking about the district court's determination. Criminal action? All right. Well, I guess we have your position then. If you don't understand the question. I think we understand the question. I think we've got your argument. Thank you. Court will be in recess until 9 in the morning. Thank you, sir. All rise. Thank you.